**Charles A.L. ALMOND, Petitioner,**

v.

**UNITED STATES of America,
Respondents.**

Civ. A. No. 93–0623–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 7, 1994.

Charles A.L. Almond, pro se.

Ruth E. Plagenhoef, U.S. Attorney's Office, Roanoke, VA, for U.S.

### MEMORANDUM OPINION

TURK, District Judge.

CHARLES A.L. ALMOND, a federal inmate proceeding *pro se*, brings this action as a motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255. He challenges the validity of his conviction and sentence on several grounds. Respondent has filed a motion to dismiss, to which petitioner has responded, making the matter ripe for the court's consideration. After review of the record, the court is of the opinion that respondent's motion must be granted and the petition dismissed.

### A. Factual Contentions

A memorandum of facts in Petitioner Almond's criminal file relates his version of the events leading up to his conviction under 18 U.S.C. § 922(g).[1] Almond, who was 60 years old at time of sentencing, has a second grade education. He is self-employed, operating an automobile garage, which he owned, near Staunton, Virginia; his son, Charles, Jr., age 23, worked with him in the business.

Charles, Jr., often went to Almond's house to watch T.V. He and Almond's adopted son, Anthony, age 8, would argue about what program to watch. The arguments disrupted the household to such an extent that Almond went to the Chesapeake Bay for several days to go fishing and get away from the turmoil. When he returned, he found that the T.V. program argument was worse than ever.

On July 14, 1991, Almond was at his home with several family members. As Almond

---

**1.** In its response to Almond's memorandum, the government stated that it would dispute certain of these facts at sentencing, but did not specify what facts were in dispute. As there is no transcript of the sentencing hearing available, the court shall here relate the facts as alleged by Almond in his memorandum.

sat in his armchair facing the T.V., the "which channel" argument between Anthony and Charles, Jr., erupted anew. Almond announced that he would settle the argument. So saying, he reached to the back of his chair's cushions, grabbed a .22 revolver, and shot the television set.

The blast sent glass shards flying. Pieces nicked Almond's baby granddaughter, April, and his stepdaughter. Neither injury was serious or permanent. However, April's parents took her to the emergency room, where the staff reported the gunshot to the sheriff's office. The sheriff's office obtained a search warrant and seized several firearms at Almond's home. A subsequent state charge for discharging a firearm in an occupied building was nolle prossed, as all agreed Almond had no intent to harm anyone.

Then, on March 4, 1992, Almond was indicted by a federal grand jury under 18 U.S.C. § 922(g), possession of a firearm as a felon, and 18 U.S.C. § 924(e), a career offender sentencing provision, carrying a mandatory minimum sentence of fifteen years without chance of parole. On April 11, 1992, the government notified Almond of the prior Virginia convictions for violent felonies which would be the basis for sentencing Almond under § 924(e) as a career offender. The three convictions were as follows:

(1) July 31, 1963, conviction for burglary of an unoccupied building;

(2) January 20, 1968, conviction of throwing a missile (a rock) at an automobile occupied by his father-in-law and shattering the windshield; and

(3) May 1, 1968, conviction of breaking and entering the office of Peeler Oil Company.

Almond pleaded not guilty, but, after a bench trial, he was convicted under § 922(g). At sentencing, based on the three prior felony convictions listed above, the court found him to be an armed career criminal under § 924(e) and imposed the mandatory minimum sentence of fifteen years.

## B. Petitioner's Claims

Almond's claims are set forth in his motion as follows:

(A) The court erred in sentencing petitioner as a "Career Criminal" under 18 U.S.C. § 924(e);

(B) The indictment is defectiv[e] because:

(1) The indictment does not list the essential elements that are requir[ed] to make the indictment valid;

(2) The indictment does not state if the petitioner had gotten his civil rights back or not;

(3) 18 U.S.C. § 922(g)(1) is not a crime of violence by the U.S. Supreme Court and the Sentencing Guidelines;

(4) The indictment must have "an element the use, attempted use, or threatened use of physical force against another ..." This was not alleged in the indictment;

(5) Petitioner's prior convictions were not listed in the indictment as required by law.

(C) Petitioner alleges ineffective assistan[ce of counsel], because he did not appeal petitioner's conviction;

[D] There is no [mention] in the indictment of any crimes of violence or felonies, or any reference as to "three prior felonies"; and

[E] Possession of burglary tools is not a crime of violence.

## C. Analysis

(1) **Claim E.** First, the court notes that Almond, in his response to respondent's motion, stipulates to the fact that the government did not include his conviction for possession of burglary tools as basis for sentencing him under § 924(e). Section 924(e) requires that the three prior felony convictions be for crimes of violence, as defined in the statute. As it is now undisputed that the government did not count the burglary tools conviction as a violent offense for purposes of § 924(e), Claim E shall be denied.

(2) **Claim B(3).** The court also notes that Almond's federal offense under § 922(g) was not included in the Government's Information and Notice Advising Petitioner that his Prior Convictions Will Enhance his Sentence; in addition, because the § 922(g) charge was

not a "prior" conviction, the court finds that it could not have been and was not counted to qualify Almond for an enhanced sentence under § 924(e). Thus, the court finds Claim B(3) to be meritless, and it shall also be denied.

■ **(3) Claims B(4) and D.** The respondent argues that the elements of § 924(e) need not appear in the indictment, as § 924(e) is not a substantive charge, but rather a sentence enhancement provision. The court agrees. In *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962), the United States Supreme Court outlined the two criteria by which to measure the sufficiency of an indictment under the Fifth and Sixth Amendments: (1) whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and (2) "whether the record shows with accuracy to what extent he may plead" that his present acquittal or conviction bars a subsequent proceeding on a similar offense. The Fifth Amendment demands that the indictment reflect all necessary grand jury findings. *United States v. Hooker,* 841 F.2d 1225, 1230 (4th Cir.1988). As a grand jury must consider and find to be present all the necessary elements of the crime charged, an indictment must reflect the grand jury's findings as to all necessary elements of the crime in order to be constitutionally sufficient. *Id.* However, as the elements of a sentencing provision need not be proven beyond a reasonable doubt, they need not be found by the grand jury or reflected in the indictment. *See United States v. Blannon,* 836 F.2d 843, 844–45 (4th Cir.) (holding that elements of statute which became § 924(e) need not be reflected in indictment for crime charged), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988).

The only criminal offense for which Almond was indicted was possession of a firearm as a felon, under § 922(g). Accordingly, the court finds that elements of § 924(e) need not appear in the indictment to satisfy sufficiency requirements under the Fifth and Sixth Amendments. *Hooker, supra.* Section 922(g) does not require the felony for which

petitioner was convicted to be violent or involve physical force against another. Therefore, in indicting Almond under § 922(g), the grand jury need not have found (and need not have stated in the indictment) that Almond's prior felony conviction(s) met these § 924(e) qualifications. Accordingly, the court finds that Almond's Claims B(4) and D must be denied.

■ **(4) Claims B(1), B(2) and B(5).** Each of these three claims challenges the sufficiency of the indictment as it pertained to Almond's substantive offense under § 922(g). After thorough review of the applicable law, the court finds that these claims must also be denied.

Under the same sufficiency principles by which elements of § 924(e) need not appear in Almond's indictment, all elements of § 922(g) must appear in the indictment. *Id.* Section 922(g) reads in relevant part as follows:

It shall be unlawful for any person—

(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

"Crime" for purposes of this section is defined in 18 U.S.C. § 921(a)(20), which reads in relevant part as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Almond argues that, to convict him under § 922(g), the government had to prove that

he met the § 921(a)(20) definition of a convicted felon, that his possession of a firearm was "unlawful." Because Almond's indictment did not reflect a finding that Almond had not had his civil rights restored, Almond argues that the indictment was constitutionally insufficient.

The United States Court of Appeals for the Fourth Circuit has held that to determine whether a defendant under § 922(g) meets the § 921(a)(20) definition, the court must look to the law of the jurisdiction in which that defendant's prior convictions occurred. *United States v. Essick*, 935 F.2d 28, 30 (4th Cir.1991), citing *United States v. McLean*, 904 F.2d 216 (4th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 203, 112 L.Ed.2d 164 (1990). The court cited the Firearm Owners' Protection Act through which Congress empowered each state to determine, through its state law, whether ex-felons would be legally permitted to possess firearms under federal law.[2] *Essick*, 935 F.2d at 30–31. State laws regarding restoration of rights to ex-felons are incorporated into federal firearms statute § 922(g) through the § 921(a)(20) definition of a prior conviction. *Id.* Under § 921(a)(20), if state law restores a felon's rights after he has served his criminal penalty for a given conviction, then that conviction no longer fits the § 921(a)(20) definition of a prior conviction for purposes of § 922(g) and § 924(e).

Essick's prior convictions occurred in North Carolina. *Id.* In reviewing his conviction under § 922(g), the *Essick* court first looked to North Carolina law as a whole and determined that a North Carolina felon's civil rights are restored automatically, to a limited extent, five years after his discharge from his criminal penalty. *Id.* *See* N.C.Gen.Stat. § 13–1 and § 14–415.1 (1986). After the passage of the statutory period, a felon in North Carolina has the same civil rights as almost any other North Carolina citizen and no longer meets the § 921(a)(20) definition of a convicted felon.

After making this determination under North Carolina law, the *Essick* court held that, in charging a North Carolina felon under § 922(g), the government bears the burden of proving beyond reasonable doubt that that felon's convictions still meet the § 921(a)(20) definition of a prior conviction. *Id.* Specifically, the government must prove that the defendant does not have the same rights as ordinary North Carolina citizens have to possess a firearm. The government must affirmatively show that not enough time has yet passed since the defendant completed serving his penalty for his prior felony conviction, so his civil rights have not yet been automatically restored under North Carolina law, his conviction is still recognized as a prior conviction under § 921(a)(20), and his possession of a firearm was unlawful. *Id.*

Once the *Essick* court determined that nonrestoration of civil rights was a necessary element of a § 922(g) offense based on prior felony convictions from North Carolina, the court found Essick's indictment to be insufficient because it did not allege that Essick's civil rights had not yet been restored. *Id.* and *Hooker*, 841 F.2d at 1230.[3] The government had also offered no proof at trial regarding restoration of civil rights, and the dates of Essick's prior convictions suggested a strong possibility that his civil rights had, indeed, been restored under North Carolina law. *Id.* The court reversed Essick's conviction under § 922(g). *Id.*

In the present action, Almond's prior felony convictions are from Virginia. Thus, to determine the government's burden of proof in a § 922(g) charge against Almond, the court must look to the whole of Virginia law. *Id.* Virginia law differs markedly from North Carolina law. In Virginia, a convicted felon must petition the governor or other appropriate authority for restoration of the right to vote in elections, Va.Code Ann. § 24.1–42, and must petition the circuit court of the jurisdiction in which he resides for a permit to possess or carry a firearm. Va. Code Ann. § 18.2–308.2:1(C). There is no provision for any automatic restoration of a

---

2. *See* Pub.L. No. 99–308, 100 Stat. 449 (1986).

3. *Cf. United States v. Clark*, 993 F.2d 402 (4th Cir.1993) (restoration of civil rights is not itself

an element of the offense stated in § 922(g); rather, it is a component of the definition of element).

felon's civil rights under Virginia law. Thus, a convicted felon in Virginia retains the civil disabilities resulting from his conviction until he himself takes affirmative action to have his civil rights restored.

Looking to Virginia's law as a whole, it is the opinion of the court that the government's burden in a § 922(g) charge based on prior felony convictions under Virginia law does not include proving that the defendant retains the civil disabilities of a convicted felon. *Cf. Essick*, 935 F.2d at 30–31, and *Clark*, 993 F.2d at 406. Because felons do not automatically regain their civil rights under Virginia law, the government may presume that a person with a Virginia felony conviction on his record does not have the same civil rights as ordinary Virginia citizens and that his possession of a firearm is, therefore, unlawful.

■ To find otherwise would place too great a burden on the government in § 922(g) cases based on Virginia law. The government would be forced to track down any and all petitions for restoration of civil rights filed by a defendant—in whatever Virginia jurisdiction he resided or possibly in whatever other state he resided after receiving a Virginia conviction. Moreover, the defendant is in a much better position to prove whether he has petitioned all the appropriate authorities for restoration of civil rights and whether his possession of a firearm is no longer unlawful. Accordingly, the court finds that, while a Virginia defendant may raise the issue of restored civil rights as a defense to an indictment under § 922(g), the government need not prove beyond reasonable doubt that a Virginia defendant has not had his civil rights restored. Consequently, a § 922(g) indictment based on prior felony convictions under Virginia law need not allege that the defendant has not yet been restored his civil rights. *Hooker*, 841 F.2d at 1230.

Almond's indictment states in relevant part as follows:

CHARLES A.L. ALMOND, having been convicted in the courts of the Commonwealth of Virginia of crimes punishable by imprisonment for a term exceeding one year, knowingly possessed in commerce or

affecting commerce the following firearms. . . .

A list of the firearms confiscated from Almond's home follows this language. The court finds the language of Almond's indictment to state all the necessary elements of a § 922(g) offense based on prior felony convictions in Virginia: that Almond was previously convicted of a felony in Virginia and that, as a convicted felon, he knowingly possessed firearms "in commerce or affecting commerce." Accordingly, it is the opinion of the court that Almond's indictment was not constitutionally insufficient; Claims B(1), B(2) and B(5) are thus without merit and must be denied.

■ **(5) Claim A.** In Claim A, Almond asserts that he was unlawfully sentenced as an armed career criminal under § 924(e). Section 924(e) reads in relevant part as follows:

(e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such a person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

Almond argues that the United States Sentencing Guidelines (USSG) provisions concerning career offenders should apply in his case. He asserts that his sentence was unlawful because at least two of his convictions were too old under § 4A1.2(e) of the USSG to be used to enhance his federal criminal sentence.

The court cannot agree. Section 4A1.2(e) sets a time limit after which a prior state conviction may no longer be counted toward enhancement of a defendant's federal sentence under the USSG. However, § 4B1.4, Commentary 1 indicates that § 924(e) and its

procedural requirements supersede the USSG Armed Career Criminal definitions and time limit provisions, including the age limits imposed in § 4A1.2(e) (above) for prior state convictions. Section 5G1.1 of the USSG states that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence." Section 924(e) does not include any time limit after which prior convictions may not be counted to qualify a felon convicted under § 922(g) as an armed career criminal.

It is the reluctant opinion of the court that Almond's sentence under § 924(e), although unfairly harsh on its face given Almond's conduct and record, was lawful. First, Almond had been convicted under § 922(g) as a convicted felon in possession of a firearm in or affecting commerce. Second, Almond has not disputed that he was convicted of the three prior felonies listed in the government's Notice and Information. All three of these felonies fall under the § 924(e)(2)(B) definition of "violent" felony: each offense was a burglary and/or involved a threat of physical force against another's person. All three offenses occurred on different occasions, as required under § 924(e).

Third, there is no other evidence that any of Almond's twenty-year-old prior convictions could not be counted to qualify him under § 921(a)(20), § 922(g) and § 924(e) as an armed career criminal.[4] As stated above, to regain his civil rights after any of his prior convictions, Almond was required to petition the appropriate state authorities; no automatic restoration of rights occurs under Virginia law. Had Almond filed the necessary petitions and regained his civil rights, under § 921(a)(20), he could have raised this issue

as a defense to both his conviction and his sentence enhancement.[5]

However, Almond does not contend that his civil rights were restored after any of his prior convictions. At trial, the government submitted into evidence a letter from the Governor of Virginia, indicating that Almond had not been granted clemency as to any of his convictions. The parties stipulated before trial that Almond's firearms rights had not been restored, and the presentence report indicates that the investigating officer had also verified that Almond had not had his civil rights restored. The court finds no evidence that Almond could have shown that any of his prior convictions did not meet the § 921(a)(20) definition or that they should not have counted against him under § 924(e).

Fourth, because all the necessary elements of § 924(e) were present in Almond's case, the time limits on prior convictions under § 4B1.4 do not apply. *See* § 4B1.4, Commentary 1. Although all of Almond's prior convictions for violent felonies occurred more than twenty-three years before his § 922(g) offense, those convictions may still count under § 924(e) to brand him as an armed career criminal.

Finally, because Almond meets the definition of armed career criminal under § 924(e), that same section mandates a minimum sentence of fifteen years with no chance of suspension of sentence, probation or parole. *See also* § 5G1.1(b). His claim that his sentence under § 924(e) was unlawful must, unfortunately, be denied.

▪ **(6) Claim C.** In Claim C, Almond alleges that counsel was ineffective for failing to appeal Almond's conviction and sentence. Almond argues that counsel should have raised arguments at sentencing that the indictment was insufficient and that sentence

---

**4.** By its own terms, the § 921(a)(20) definition of a prior conviction applies to the entire chapter of the United States Code in which § 922(g) and § 924(e) are included.

**5.** Specifically and at the risk of belaboring the point, had his civil rights been restored after his most recent felony conviction for a non-violent offense in 1988, it would not have been unlawful for him to possess a firearm in his own living-room. He also would not likely have been charged under § 922(g) as a convicted felon in

possession of a firearm. Had he regained his civil rights at any time after completing sentence for any of his old felony convictions, he would not have qualified as an armed career criminal under § 924(e) for the following reason: if any one of these convictions could not have been counted under § 921(a)(20), he would not have had three prior *violent* felony convictions on his record as required for an enhanced sentence under § 924(e).

under § 924(e) was unlawful. Almond also alleges that counsel was ineffective for failing to raise these same arguments on direct appeal of Almond's conviction. The court finds no merit in any of these claims.

To prove that he did not receive the adequate assistance of counsel, Almond must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 684–87, 104 S.Ct. 2052, 2062–65, 80 L.Ed.2d 674 (1984). First, he must show that counsel's representation fell below an objectively reasonable performance. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S.Ct. at 2065. Second, Almond "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. Counsel's performance must have been so egregious as to "undermine confidence in the outcome" of the proceeding. *Id.* If it is clear that no prejudice resulted from the alleged error, it is not necessary to inquire whether such error constituted inadequate representation. *Id.* at 697, 104 S.Ct. at 2069. In determining whether Almond was prejudiced by particular errors, the court must consider the totality of the evidence before the factfinder. *Id.* at 695, 104 S.Ct. at 2068.

▆ Trial counsel has an obligation to perfect or prosecute defendant's direct appeal as of right, once that defendant has requested an appeal. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 836, 83 L.Ed.2d 821 (1985). Counsel's failure to meet this obligation creates a presumption of ineffective assistance, a violation of due process. *Id.* Because defendant's vital interest in liberty is at stake in appeal as of right, trial counsel's failure to perfect appeal as of right, once his client has requested an appeal, also constitutes total deprivation of the Sixth Amendment right to assistance of counsel, regardless of probability of success on appeal. *United States v. Peak*, 992 F.2d 39, 42 (4th Cir.1993).

Almond's court-appointed counsel has filed an affidavit in support of respondent's motion. Counsel states that, due to severe medical problems, he was not personally present at Almond's sentencing hearing. However, he states that character witnesses testified at sentencing on Almond's behalf and that, after sentence was imposed, substitute counsel requested and procured a thirty-day delay in reporting to prison to allow Almond to set his business affairs in order. During that period, Almond and counsel had a conference. Counsel states that he explained that "all defenses as outlined in the manual published by the United States Public Defender's Office in Los Angeles had been advanced" to the court, but that all the defenses had been rejected as they had already been struck down by appellate courts. Counsel then advised Almond that an appeal would not be successful and states that Almond did not inform him at that time that he desired to file an appeal. After Almond was in prison, a friend of Almond's called counsel on Almond's behalf to request an appeal. Counsel informed Almond by letter that the time for filing an appeal had long since passed.

First, the court must find that, even assuming that Almond's counsel made no argument at trial or sentencing concerning sufficiency of the indictment and the lawfulness of the § 924(e) sentence, such errors did not prejudice Almond in any way. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069. The court has determined above that both these legal arguments must fail in Almond's case. The court already found that the indictment was constitutionally sufficient, *Hooker*, 841 F.2d at 1230, and that the sentence was lawful under § 942(e), *Essick*, 935 F.2d at 30–31. Accordingly, even if counsel had made arguments to the contrary, the outcome would have been the same. As Almond has thus failed to show prejudice, his claim that these alleged errors by counsel represented ineffective assistance is without merit and must be denied.

Second, the record reflects that Almond's counsel made a valiant effort to arouse sympathy for his client's plight and to convince the court of the harshness of sentencing Almond as an armed career criminal, given the nature of his offense and the age of his previous violent felonies. Almond does not

dispute that counsel raised all defenses listed in the Public Defender's Manual, strong indication that counsel's performance was well within the bounds of "reasonableness under the prevailing professional norms." *Strickland, supra,* 466 U.S. at 688, 104 S.Ct. at 2065. At the very minimum, counsel's thorough use of the Manual indicates that he exercised some degree of diligence in pursuing the legal defenses available to Almond. *Id.* The fact that the law prevented the court from considering any mitigating evidence in pronouncing sentence under § 924(e) does not indicate any incompetence of representation by Almond's counsel. *Id.*

Finally, Almond has never alleged that he actually asked counsel to appeal his conviction. Almond merely states that he told counsel he did not believe he qualified for sentencing under § 924(e) and that counsel advised him "not to worry about it." Counsel states that Almond did not communicate his desire to file an appeal until after the time for filing an appeal had passed. Counsel cannot be found incompetent because he failed to read his client's mind. Because Almond failed to communicate to counsel in a timely manner that he wished to file an appeal, counsel had no obligation to prosecute that appeal. *Evitts,* 469 U.S. at 396, 105 S.Ct. at 836, and *Peak,* 992 F.2d at 42. Certainly, counsel cannot reasonably be expected to file an appeal after the appeal filing deadline has passed. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. Accordingly, it is the opinion of the court that Almond's claim of ineffective assistance of counsel has no merit and must be denied.

### D. Conclusion

For the foregoing reasons, the court can find no basis on which to overturn Almond's conviction and sentence. A sixty-year-old man who went for twenty-some years without being charged with any violent offenses, but who just couldn't stand to hear any more arguments in his own livingroom over switching the television channel, is, under current law, an armed career criminal worthy of spending fifteen years in prison. Congress can change current laws and the President of the United States may grant a federal con-

vict clemency even in the face of current law, but, regrettably, under current law this court cannot grant Mr. Almond the relief he seeks. His motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, must be denied. An appropriate order shall be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.