SAMSUNG ELECTRONICS CO., LTD., ET AL., PLAINTIFFS *v.*
UNITED STATES, DEFENDANT

Consolidated Court No. 91–04–00327

(Dated September 21, 1994)

*Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Larry Hampel* and *Joseph A. Perna, V)* for plaintiff Zenith Electronics Corporation.

*Collier, Shannon, Rill & Scott (Paul D. Cullen, Jeffrey S. Beckington, Mary T. Staley, David C. Smith, Jr.* and *Gail S. Usher)* for plaintiff-intervenors Independent Radionic Workers of America, the International Brotherhood of Electrical Workers, the International Union of Electronic, Electrical, Technical, Salaried and Machine Workers (AFL-CIO) and the Industrial Union Department (AFL-CIO).

*Reid & Priest (David A. Gantz* and *Jennifer Karas)* for plaintiff Quantronics Mfg. Korea, Ltd.

*Frank W. Hunger,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice *(Velta A. Melnbrencis), Priya Alagiri,* Attorney Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. (Sukhan Kim, Warren E. Connelly, P.C.* and *Margaret L.H. Png)* for defendant-intervenors Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.

## OPINION

RESTANI, *Judge:* This matter is before the court on four motions pursuant to USCIT Rule 56.2 for judgment upon the agency record. The

motions have been brought by (1) the Independent Radionic Workers of America, the International Brotherhood of Electrical Workers, the International Union of Electronic, Electrical, Technical, Salaried and Machine Workers (AFL-CIO) and the Industrial Union Department (AFL-CIO) (collectively "the Unions"), (2) Zenith Electronics Corporation, (3) Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively "Samsung"), and (4) Quantronics Mfg. Korea, Ltd. The court has consolidated these separate challenges to the determination of the International Trade Administration of the United States Department of Commerce ("ITA" or "Commerce") in *Color Television Receivers from the Republic of Korea,* 56 Fed. Reg. 12,701 (1991) (fifth final admin. review).

## STANDARD OF REVIEW

As this consolidated action constitutes a challenge to the final determination of an administrative review, the applicable standard of review is whether the final determination is supported by substantial evidence on the record and is otherwise in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B) (1988).

## DISCUSSION

### I. *Adjustment for Value-added Taxes:*

To account for home market value-added taxes ("VAT") forgiven by reason of exportation, Commerce added the amount of VAT to United States price ("USP") and made circumstance of sale ("COS") adjustments to foreign market value ("FMV").[1] 56 Fed. Reg. at 12,702. All parties agree that Commerce may not make a COS adjustment for VAT, as decided by the Federal Circuit in *Zenith Elecs. Corp. v. United States,* 988 F.2d 1573, 1581 (Fed. Cir. 1993). This case is remanded for a recalculation of VAT pursuant to Commerce's new methodology, which was upheld in *Torrington Co. v. United States,* 854 F. Supp. 446, 448–49 (Ct. Int'l Trade 1994) and *Independent Radionic Workers v. United States,* Slip Op. 94–144, at 3–4 (September 16, 1994).

### II. *Adjustments for Antidumping Duties:*

Zenith contends that antidumping duties actually paid or to be paid should be deducted from USP pursuant to 19 U.S.C. § 1677a(d)(2)(A), (e)(2) (1988).[2] *See also* 19 C.F.R. § 353.26(a) (1991) (providing for deduction of antidumping duties that producer or reseller paid directly on behalf of importer or reimbursed to importer).

---

[1] Commerce did not measure the amount of tax passed through to the home market consumer. 56 Fed. Reg. at 12,702. The Unions have withdrawn their claim contesting Commerce's decision, in light of *Daewoo Elecs. Co. v. United States,* 6 F. 3d 1511, 1517 (Fed. Cir. 1993), *cert. denied,* 114 S. Ct. 2672 (1994).

[2] Section 1677a(d)(2)(A) provides that USP shall be reduced by

the amount, if any, included in such price, attributable to any additional costs, charges, and expenses, and United States import duties, incident to bringing the merchandise from the place of shipment in the country of exportation to the place of delivery in the United States * * *.

19 U.S.C. § 1677a(d)(2)(A). Section 1677a(e)(2) provides that the exporter's sales price, a type of USP, shall be reduced by the amount of "expenses generally incurred by or for the account of the exporter in the United States in selling identical or substantially identical merchandise." *Id.* § 1677a(e)(2).

In the final determination, Commerce rejected Zenith's claim for a deduction in the amount of *estimated* antidumping duties. 56 Fed. Reg. at 12,703–04. Zenith now asserts that adjustments should be made for *actual* antidumping duties. The issues are not the same. *See Zenith Elecs. Corp. v. United States,* Slip Op. 94–146, at 5–6 (Sept. 19, 1994); *PQ Corp. v. United States,* 11 CIT 53, 652 F. Supp. 724 (1987). Therefore, Zenith has failed to exhaust its administrative remedies as to its actual antidumping duty expense claim.[3]

Moreover, Zenith failed to raise the issue of a deduction for actual antidumping duties in its complaint. *See* USCIT Rule 8(a) (requiring pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief"); Compl. ¶ 4(i) (alleging that ITA erred by failing to account for estimated antidumping duties). Zenith's motion to amend its complaint was denied. *Zenith Elecs. Corp. v. United States,* Consol. Court No. 91–04–00327 (Ct. Int'l Trade July 22, 1994) (order denying Zenith's motion to amend complaint). The issue is thus not. properly before this court and the court will not address it.

III. *Indirect Versus Direct Expenses in COS Adjustments to FMV:*

A. Bad Debt Expense

During the administrative proceedings, Samsung claimed that bad debt expenses incurred during the period of review are entitled to treatment as direct selling expenses. 56 Fed. Reg. at 12,705. Samsung relied on *Daewoo Elecs. Co. v. United States,* 13 CIT 253, 257, 712 F. Supp. 931, 938 (1989), *aff'd in part and rev'd in part on other grounds,* 6 F.3d 1511 (Fed. Cir. 1993), *cert. denied.,* 114 S. Ct. 2672 (1994). ITA declined to follow *Daewoo* on the ground that it did not constitute a final decision and was subject to reversal. 56 Fed. Reg. at 12,705. ITA now requests a remand to reconsider the issue.

In *Daewoo,* ITA asserted that bad debt expenses were indirect unless they were incurred on sales under review and the debt was written off during the period of investigation. 13 CIT at 257, 712 F. Supp. at 938. Samsung countered that ITA's treatment of bad debt expenses and warranty expenses was thus inconsistent. *Id.* The court agreed, finding no meaningful distinction

> between warranty expenses, which are supposedly 'always direct,' whether or not they are actually incurred with regard to the sales under review, and bad debt expenses, which are determined to be either 'direct' or 'indirect' depending on whether they are actually incurred with regard to the specific sales under review.

*Id.* at 258, 712 F. Supp. at 939. According to the court, "[a]bsent any reasonable indication as to why the estimation of bad debt expenses based on past experience is any less reliable than the use of past experience for

---

[3] Zenith argues that waiver of the exhaustion requirement is appropriate because the issue is purely legal and raising it before the agency would have been futile. *See Budd Co. v. United States,* 15 CIT 446, 452 n.2, 773 F. Supp. 1549, 1555 n.2 (1991). Zenith made the same arguments in its challenges to the results of the third and fourth administrative reviews. The arguments are rejected for the same reasons stated in the court's disposition of those challenges. *Zenith,* Slip Op. 94–146, at 5 n.4; *Zenith Elecs. Corp. v. United States,* Slip Op. 94–148, (Sept. 21, 1994) at 4 n.3.

warranty expenses, this distinction between them is not proper." *Id.* at 259, 712 F. Supp. at 940.

*Daewoo* does not completely foreclose ITA from treating bad debt expenses as indirect. Nonetheless, ITA had the benefit of *Daewoo* and it neither articulated factors which would distinguish its treatment of bad debt from its treatment of expenses such as warranty, technical services and advertising, nor collected information which would be relevant to such a distinction. The court deems it unwise to reopen this issue to allow ITA to venture down this avenue at this late date in these proceedings. Accordingly, ITA is instructed to treat Samsung's bad debt expenses as a direct selling expense, unless Samsung failed to supply sufficient data to make a deduction.

B. Home Market Warranty Expenses

Samsung requested ITA to classify as direct all home market warranty expenses, both fixed and variable. 56 Fed. Reg. at 12,706. As support, Samsung cited *AOC Int'l, Inc. v. United States,* 13 CIT 716, 721 F. Supp. 314 (1989). 56 Fed. Reg. at 12,706. ITA denied Samsung's request on the ground that "[u]nder our long-established policy, fixed costs do not qualify as directly related selling expenses." *Id.* As the remand in *AOC* was not yet final and was subject to reversal, ITA declined to overturn its policy. *Id.*

In *AOC,* Commerce denied a direct selling expense adjustment for the labor component of in-house warranty expenses on the ground that these expenses were fixed rather than variable. 13 CIT at 717, 721 F. Supp. at 316. This court rejected "ITA's rationale that the in-house labor costs * * * are fixed overhead costs which a company incurs irrespective of the terms of the sales under consideration." *Id.* at 718, 721 F. Supp. at 316. The court explained,

> [i]t would be contrary to common sense to maintain a warranty servicing department and to pay salaries to the in-house servicemen, if no warranty terms were offered on the CTV sales. Similarly, a much smaller servicing department would be necessary to service warranties with more limited terms.

*Id.,* 721 F. Supp. at 316–17.

The court refused to imply a requirement that each component of warranty costs must independently qualify as a direct selling expense. *Id.* at 719, 721 F. Supp. at 317. It also did not hold "that the eligibility of warranty expenses as directly-related selling expense *per se* qualifies the labor cost component of the warranty expenses as directly-related selling expense." *Id.,* 721 F. Supp. at 318. Taking the middle path, the court deemed it illogical "to grant an adjustment for the difference in warranty expenses, while disallowing a major cost component of this directly-related selling expense." *Id.,* 721 F. Supp. at 317. AOC thus leaves Commerce some discretion in determining whether certain components of home market warranty costs qualify as direct selling expenses.

This issue is remanded for ITA to modify its decision in light of *AOC* and to provide a reasoned explanation if direct selling expense treatment is to be denied for certain claimed components (other than labor) of warranty costs.

C. Forwarding Expenses

The Unions challenge ITA's allowance of a direct selling expense adjustment for the labor component of Samsung's home market forwarding expenses. In its questionnaire response, Samsung claimed that it incurred labor costs which involved the hiring of temporary hourly workers, on an as needed basis, who loaded CTVs at the warehouse onto trucks for shipment. Resp. Br. Def.-Ints. Opp'n Pl.-Ints.' Mot. J. Agency R., App. 1, at 2 n.2. This certainly is evidence that these post-sales expenses are directly related to sales. There is, however, some information in the record indicating that these workers were paid vacation bonuses. Resp. Br. Def.-Ints. Opp'n Pl.-Ints.' Mot. J. Agency R., at 51–52. This information belies classification of the workers as temporary, although this does not necessarily preclude direct expense treatment. *See supra* discussion of home market warranty expenses. In connection with the second administrative review, this issue was remanded to Commerce to formulate a consistent position with regard to its direct selling expense standards. *See Independent Radionic Workers,* Slip. Op. 94–144, at 30 (Sept. 16, 1994). It would appear appropriate to insure that the decision here is in harmony with whatever standard is established. The outcomes, of course, may differ depending on the facts established in each record. This issue is therefore remanded to ITA for reconsideration of its treatment of home market forwarding expenses.

IV. *Fluctuating Exchange Rates:*

Quantronics argues that it is entitled to an adjustment for the difference in sales prices in the home market and in the U.S. market that are solely attributable to fluctuating exchange rates. It relies on 19 C.F.R. § 353.60 (1991).[4] It also relies on *Industrial Quimica del Nalon, S.A. v. United States,* 13 CIT 1055, 1063, 729 F. Supp. 103, 110 (1989), for the proposition that § 353.60(b) of the regulation applies to periodic reviews, as well as to the initial fair value investigation. By its terms part (b) does not apply to periodic reviews, as the court recognized in *Sugiyama Chain Co. v. United States,* 16 CIT 526, 538, 797 F. Supp. 989, 1000 (1992). Nonetheless, *Industrial Quimica,* 13 CIT at 1065, 792 F. Supp. at 112, *Sugiyama,* 16 CIT at 538 n.4, 797 F. Supp. 999 n.4, and *Brother Indus., Ltd. v. United States,* 15 CIT 332, 343–44, 771 F. Supp. 374,

---

[4] Section 353.60, pertaining to the conversion of currency, provides:

(a) *Rule for conversion.* The Secretary will convert * * * a foreign currency into the equivalent amount of United States currency at the rates in effect on the dates described in § 353.46, § 353.49, or § 353.50, as appropriate.

(b) *Special rules for investigations.* For purposes of investigations, producers, resellers, and importers will be expected to act within a reasonable period of time to take into account price differences resulting from sustained changes in prevailing exchange rates. When the price of the merchandise is affected by temporary exchange rate fluctuations, the Secretary will not take into account in fair value comparisons any difference between United States price and foreign market value resulting solely from such exchange rate fluctuation.

19 C.F.R. § 353.60 (1991).

385–86 (1991), all recognize that there are instances in which an exchange rate adjustment is permitted even in an administrative review.

Both *Brother* and *Sugiyama* state that respondents, who are already on notice from the antidumping order to monitor their pricing, must demonstrate on the record that the fluctuating "exchange-rate behavior was beyond their ability to compensate." *Sugiyama,* 16 CIT at 538–39, 797 F. Supp. at 1000 (quoting *Brother,* 15 CIT at 343, 771 F. Supp. at 385). The court sees no reason to reject this standard. Quantronics, having failed to meet the standard, cannot prevail on its claim.

### V. *Use of Third Country Sales:*

Quantronics argues that Commerce should not have used sales in Japan to calculate FMV because the sales were not sufficiently close in time to its U.S. sales. The U.S. sales occurred on January 29, 1988. Commerce used a monthly weighted average for October 1987 sales in Japan. Contrary to Quantronics' contention, Commerce's time period rules for comparison do not require a day to day match. *See* 19 C.F.R. § 353.60(a). For purposes of this case, the monthly average may be considered to be within 90 days of any sale in the third successive month. The court is not inclined to impose a narrow construction on Commerce of its "90/60" rule[5] where the respondent has requested the use of third country prices, as Quantronics did here.[6]

### CONCLUSION

This case is hereby remanded to Commerce with instructions to (1) apply the new methodology to VAT, (2) treat bad debt as a direct selling expense if sufficient data exists, (3) reconsider home warranty expenses, and (4) reconsider forwarding expenses. In all other respects, ITA's determination in the fifth administrative review of color televisions from Korea is sustained. Commerce is directed to submit its remand results within 90 days. Any comments thereon are due within twenty days thereafter. Commerce may respond in 12 days.

---

[5] Commerce looks 90 days back and 60 days forward in attempting to find comparison sales.

[6] Furthermore, Quantronics failed to appear at the scheduled oral argument and neither sought nor obtained permission to submit its motion on briefs. Therefore, its motion is denied based on default as well.