## UNITED STATES of America

v.

## Anthony SCALES

## No. CRIM.98–114–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 25, 2002.

Peter Hugh White, Hunton & Williams, McLean, VA, for Plaintiff.

Robert Stanley Powell, Arlington, VA, Frank Salvato, Alexandria, VA, for Defendant.

### *ORDER*

ELLIS, District Judge.

The matter is before the Court on defendant Anthony Scales' *pro se* motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Both defendant and the government have fully briefed the issues raised in defendant's motion and the matter is now ripe for disposition.[1] Oral argument is dispensed with because the facts and legal contentions are adequately set forth in the exist-

---

1. Specifically, the following submissions were reviewed and considered in the resolution of defendant's motion: (i) defendant's May 22, 2002 motion, (ii) the government's June 21, 2002 opposition to defendant's motion, (iii) defendant's July 15, 2002 reply to the government's opposition, (iv) the government's August 8, 2002 response to defendant's reply, (v) defendant's August 26, 2002 reply to the government's response, and (vi) two letters from defendant, with attachments, one dated Sep-

ing record and oral argument would not aid the decisional process.

## I.[2]

The trial record reflects that in the early morning hours of December 20, 1997, Officer William Bunney of the Alexandria Police Department solicited a prostitute, Kathleen Simmons, in the course of an undercover vice patrol operation in Alexandria, Virginia. At the time of the solicitation, Simmons entered Officer Bunney's unmarked van, where a listening device was hidden, and informed Officer Bunney that she was able to purchase two rocks of crack cocaine from a local source for $40. At Simmons' direction, Officer Bunney then drove the unmarked van to the Lynnhaven area of Alexandria, where he gave Simmons two pre-recorded $20 bills. While in Lynnhaven, Simmons approached defendant, her local crack cocaine source, entered his vehicle, and purchased two rocks of crack cocaine from defendant using the pre-recorded bills provided by Officer Bunney. Simmons then returned to Officer Bunney's unmarked van with the two rocks of crack cocaine in her possession. Based on this series of events, both Simmons and defendant were charged with possession and distribution of crack cocaine in the Circuit Court of the City of Alexandria. Moreover, at the time of his arrest by state authorities, defendant, a convicted felon, was found to be in possession of a firearm.

While the state drug charges were pending against defendant and Simmons, a federal investigation commenced into defendant's drug trafficking activities. Simmons ultimately received a subpoena to testify before a federal grand jury concerning defendant's drug trafficking activities. On receipt of the subpoena, Simmons promptly contacted defendant by telephone, who directed her not to testify. Simmons complied with defendant's request and disregarded the federal subpoena. Nonetheless, on March 19, 1998, a federal grand jury sitting in the Eastern District of Virginia returned a five-count indictment against defendant based on his conduct on December 20, 1997, charging him with the following offenses: (i) distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 1), (ii) using and carrying a firearm during a crime of violence or a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts 2 and 4), (iii) possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 3), and (iv) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 5). Following the filing of the five-count indictment, federal agents attempted to arrest defendant at his residence, but were unsuccessful.

Following the filing of the federal indictment, on March 29, 1998, Simmons observed defendant driving a silver Isuzu in Alexandria, Virginia. Simmons, wishing to purchase a quantity of crack cocaine, motioned for defendant to stop his vehicle and defendant complied. After Simmons entered the vehicle, defendant accused Simmons of talking to law enforcement authorities regarding his drug trafficking activities. Defendant then drove Simmons to an apartment in Washington, D.C. and left her there in the custody of the resident, Anthony Collins, to smoke crack cocaine.

tember 17, 2002, and the other dated November 11, 2002.

**2.** The facts recited here are derived from the trial record and are construed, as required, in the light most favorable to the government. *See United States v. Stockstill,* 26 F.3d 492, 495 (4th Cir.1994).

Later that day, defendant returned to Collins' apartment and told Simmons that he (defendant) would take her home. Simmons and defendant then entered defendant's vehicle, with defendant seated in the driver's seat, Simmons seated in the front passenger seat, and another individual, Raymond Jackson, seated directly behind Simmons. Later, while defendant drove the vehicle, Jackson wound a rope around Simmons' neck and began to choke her, telling her "You snitched, bitch." Defendant then stopped the vehicle in a remote area of Washington, D.C., where he and Jackson began punching Simmons repeatedly in the face. Defendant eventually took a gun from Jackson, shot Simmons in the back of the head, and then threw her out of the vehicle onto the ground. Outside the vehicle, defendant and Jackson continued to strike Simmons with their fists and feet and hit her head against the curb, as well. Simmons testified at defendant's trial that she then "played dead" in the hope that defendant and Jackson would cease striking her. The ruse worked, as defendant and Jackson then fled the scene in defendant's vehicle. Defendant later traveled to Charlottesville, Virginia and told his girlfriend, Deana Hubbard, that he had "beaten and killed" the woman with whom he had been arrested on state drug charges. Contrary to defendant's belief in this regard, Simmons miraculously survived the gunshot wound to the head and the brutal physical attack to become the government's star witness at defendant's federal trial, identifying defendant as her assailant in the course of a compelling direct examination.

Also testifying at defendant's trial was Officer Darell Garner, a member of the Metropolitan Police Department. Officer Garner was the first law enforcement officer to arrive at the scene of Simmons' attack, in response to a 911 telephone call placed by an unidentified individual. Upon arrival at the scene, Garner spoke with an unidentified white male who reported that he had observed a gray Isuzu Trooper in the vicinity of the attack. This white male was neither identified by name nor detained by law enforcement authorities at the scene. Officer Garner also questioned Simmons at the scene, who, despite her serious injuries, was able to name defendant as being one of her assailants. Based on Simmons' statements, officers from the Metropolitan Police Department obtained a color photograph of defendant from the Alexandria Police Department. When the officers later showed this photograph to Simmons at the hospital, she confirmed that the photograph depicted "Scales, the one who tried to kill me."

Defendant was eventually apprehended and arrested by law enforcement authorities on April 2, 1998. At the time of his arrest, he was found to be in possession of a pill bottle containing 1.824 grams of crack cocaine. A subsequent search of defendant's Isuzu revealed blood stains on the window, seat, seatbelt, and roof of the front passenger area. A comparative DNA analysis of these blood stains and blood drawn from Simmons revealed that Simmons was the likely source of the blood found in defendant's vehicle. In this regard, the government's expert witness testified at defendant's trial that the chance of a random blood match was one in 110,000 African–Americans.

On April 30, 1998, a federal grand jury sitting in the Eastern District of Virginia returned an eleven count superseding indictment against defendant. Specifically, in addition to the five counts charged against him in the original indictment on March 19, 1998, the superseding indictment charged defendant with the following additional offenses: (i) obstruction of justice, in violation of 18 U.S.C. § 1503 (Counts 6 and 8), (ii) attempted killing of a

witness, in violation of 18 U.S.C. § 1512(a) (Count 7), (iii) using and carrying a firearm during a crime of violence or a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 9), (iv) kidnaping, in violation of 18 U.S.C. § 1201 (Count 10), and (v) possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 11).

On August 5 and 6, 1998, following a three-day jury trial, defendant was found guilty of ten of the eleven counts charged against him in the superseding indictment,[3] namely:

(i) distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Count 1);

(ii) using and carrying a firearm during a crime of violence or a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts 2, 4 and 9);

(iii) possession with the intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (Counts 3 and 11);

(iv) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 5);

(v) obstruction of justice, in violation of 18 U.S.C. § 1503 (Counts 6 and 8); and

(vi) attempted killing of a witness, in violation of 18 U.S.C. § 1512(a) (Count 7).

On March 19, 1999, defendant was sentenced to life imprisonment on Count 7, five years on Counts 2 and 5, and twenty years on Counts 1, 3, 4, 6, 8, 9 and 11.[4] The sentences imposed on Counts 1, 3, 5, 6, 7, 8 and 11 were ordered to run concurrently with one another, while the sentences imposed on Counts 2, 4 and 9 were ordered to run consecutively with one another and with the concurrent sentences imposed on Counts 1, 3, 5, 6, 7, 8 and 11. Defendant, by counsel, appealed his convictions and sentence to the Court of Appeals for the Fourth Circuit, which affirmed on January 30, 2001. *See United States v. Scales*, 2 Fed.Appx. 390 (4th Cir. 2001). Defendant, by counsel, subsequently filed a petition for a writ of certiorari with the United States Supreme Court, which was denied on June 11, 2001. *See Scales v. United States*, 533 U.S. 910, 121 S.Ct. 2259, 150 L.Ed.2d 244 (2001). Thereafter, on May 22, 2002, defendant, proceeding *pro se*, filed the instant motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, alleging that his trial counsel, Joseph McCarthy, and his sentencing and appellate counsel, Frank Salvato, were ineffective in several respects.

## II.

A two-prong test applies to ineffective assistance of counsel claims. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First,

**3.** Specifically, on August 5, 1998, the jury returned a verdict of guilty as to Counts 1, 3, 4, 5, 6, 7, 8 and 11. The following day, August 6, 1998, the jury returned a verdict of guilty as to Counts 2 and 9. The jury was unable to reach a unanimous verdict as to the remaining count of the superseding indictment, Count 10, charging defendant with kidnaping, in violation of 18 U.S.C. § 1201. Thus, on October 22, 1998, Count 10 was dismissed on the government's motion.

**4.** The parties agreed at sentencing that the total offense level applicable to the offenses of conviction was 35, resulting in a range of punishment under the Guidelines of 235 to 293 months given defendant's Criminal History Category of IV. This Guidelines range of punishment was trumped by the operation of 18 U.S.C. § 3559(c), which mandated a term of life imprisonment as to Count 7, and by the operation of 18 U.S.C. § 924, which provided for a statutory maximum term of imprisonment of five years as to Counts 2 and 5.

defendant must show that his counsel's performance "fell below an objective standard of reasonableness," and second, he must show that "the deficient performance prejudiced the defense." *Id.* at 688, 104 S.Ct. 2052. In other words, defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. A "reasonable probability" in this regard is "a probability sufficient to undermine confidence in the outcome." *Id.; see also United States v. Foster,* 68 F.3d 86 (4th Cir.1995). And, to prevail on an ineffective assistance of counsel claim, defendant must overcome a strong presumption "that counsel's conduct falls within the wide range of reasonable professional assistance" and that the challenged action "might be considered sound trial strategy." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

## III.

■ Defendant first contends that his trial counsel, Joseph McCarthy, was ineffective in failing to use Officer Garner's police report as impeachment material against Officer Garner and Simmons at trial. In this regard, defendant contends that Officer Garner's report indicates that the assailant was unknown to Simmons,[5] contrary to Officer Garner's and Simmons' testimony at trial.

In the course of his testimony, Officer Garner made clear that Simmons specifically identified and named defendant as one of her assailants on several occasions, including doing so at the scene of the attack. Given this testimony, trial counsel believed that confronting Officer Garner

regarding the specifics of his written report "would only have provided him with additional opportunities to testify that Ms. Simmons named Mr. Scales as her assailant." McCarthy Affidavit at ¶ 6. Likewise, given that Simmons was such a compelling witness, trial counsel did not believe that defendant's interest would best be served by keeping Simmons on the stand for an extended period of time. *Id.* at ¶ 7. Specifically, trial counsel believed that a prolonged cross-examination of Simmons "would have given her an opportunity to vent her anger at Mr. Scales and persuade the jury of her conviction in identifying Mr. Scales as her assailant." *Id.* In the circumstances, trial counsel's decision not to utilize Officer Garner's police report as impeachment material against Officer Garner and Simmons was objectively reasonable, as it may "be considered sound trial strategy." *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Defendant also claims that trial counsel was ineffective in failing to investigate the 911 telephone call. According to trial counsel, defendant's primary defense theory was that Simmons was attacked by an unknown individual, possibly one of Simmons's customers, and possibly the unidentified white male was who questioned at the scene, but not detained by law enforcement authorities. In trial counsel's professional opinion, producing the 911 call "would only highlight for the government the need to close the hole in its case, if possible, by trying to identify the caller and having that person in the courtroom." McCarthy Affidavit at ¶ 8. Trial counsel believed that the defense theory was strengthened by the 911 caller's absence

---

5. Specifically, defendant points to the following language from Officer Garner's report: C-1 is a...[witness] to a drug case with the Defendant last name "Scales." The unknown suspect called her a snitch, and then started kicking her, and shot at her. C-1 is surpose [sic] to attend court on "Scales" on 4/14/98. C-1 is a key witness to this offense. C-1 gave a look out for a "gray Bronco truck."

because counsel then had the opportunity to emphasize to the jury that the police spoke to an unidentified white male at the crime scene when they responded to the 911 call, who might possibly have been one of Simmons' customers and who might possibly have been responsible for the attack. *See id.* at ¶ 8. According to trial counsel, "[t]his provided Mr. Scales with some theory inconsistent with Ms. Simmons' very powerful direct testimony that Mr. Scales beat her, shot her in the head and then left her for dead on a curb in an isolated area of Washington, D.C." *Id.* Given these impressions, trial counsel's decision not to investigate the 911 telephone call was objectively reasonable and again, "might be considered sound trial strategy." *See Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Yet, even assuming, *arguendo,* that trial counsel acted unreasonably in failing to cross-examine Officer Garner and Simmons regarding Officer Garner's police report, or in failing to investigate the 911 telephone call, defendant has nonetheless failed to establish any prejudice resulting from these alleged errors. Specifically, defendant has failed to establish any reasonable probability that either (i) the use of Officer Garner's police report as impeachment evidence against Officer Garner and Simmons, or (ii) an investigation by trial counsel into the 911 telephone call, would have led to a different jury verdict. *See Strickland,* 466 U.S. at 694, 104 S.Ct.

2052; *Glover v. Miro,* 262 F.3d 268, 275 (4th Cir.2001) (recognizing that a defendant seeking to prove prejudice must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

## IV.

■ Defendant next contends · that his trial counsel, Joseph McCarthy, and his sentencing [6] and appellate counsel, Frank Salvato, were ineffective in failing to argue that defendant's civil rights had been restored with respect to certain of his prior felony convictions and thus, that there was no basis for the conviction on Count 5 for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g).[7] Whether a prior conviction meets the statutory definition set forth in 18 U.S.C. § 921(a)(20) is determined by the law of the jurisdiction in which the prior conviction occurred, which in this case is Virginia. *See United States v. Essick,* 935 F.2d 28, 29–30 (4th Cir.1991). This inquiry requires "an analysis of whether and to what extent the jurisdiction in which the prior conviction occurred 'restores the civil rights' of ex-felons." *Id.* at 30.

■ Under Virginia law, there is no automatic restoration of civil rights; rather, a convicted felon is required to petition the Governor or other appropriate authority if he wishes to have his civil rights

---

**6.** Prior to sentencing, defendant filed a *pro se* motion to disqualify trial counsel, Joseph McCarthy, from further representation in this matter. By Order dated September 11, 1998, defendant's motion was granted insofar as the Clerk was directed to appoint new counsel to represent defendant in connection with the sentencing proceeding. *See United States v. Scales,* Criminal No. 98–114–A (E.D.Va. Sept. 11, 1998) (Order).

**7.** Under 18 U.S.C. § 922(g), it is unlawful for any person "who has been convicted in any

court of, a crime punishable by imprisonment for a term exceeding one year...[to] possess in or affecting commerce, any firearm or ammunition...." The statute further provides, however, that "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20).

restored. *See Almond v. United States*, 854 F.Supp. 439, 443–44 (W.D.Va.1994); Va.Code Ann. § 24.2–101 (stating that "[n]o person who has been convicted of a felony shall be a qualified voter unless his civil rights have been restored by the Governor or other appropriate authority"); 1999 Op. Atty. Gen. (Aug. 3, 1999) (recognizing that a felon's civil rights may be restored by the Governor, or by any other appropriate authority, including the President, other governors, and pardoning boards with such authority). Indeed, the restoration of civil rights within the Commonwealth of Virginia "is linked to clemency power reserved exclusively to [the] Governor." 1999 Op. Atty. Gen. (Nov. 15, 1999). Thus, "a convicted felon in Virginia retains the civil disabilities resulting from his conviction until he himself takes affirmative action to have his civil rights restored" by the Governor or other appropriate authority. *Almond*, 854 F.Supp. at 444.

■ Here, as evidence of the alleged restoration of his civil rights, defendant submits a copy of a Voter Registration Card issued in his name by the Commonwealth of Virginia on August 8, 1996, as well as a copy of a Certificate of Discharge issued by the Virginia Parole Board, effective May 9, 1996. The government, in response, submits a letter from Norma J. Smith, the Clemency Specialist from the Office of the Governor–Secretary of the Commonwealth of Virginia, advising that the Commonwealth has no record of defendant's civil rights ever having been restored, as he contends.[8] The government

further contends that the Commonwealth advised the government that mere possession of a Virginia Voter Registration Card or a Virginia Certificate of Discharge does not mean that an individual's civil rights have been properly restored under Virginia law. In the circumstances, it appears clear that defendant never took "affirmative action to have his civil rights restored" by the Governor or other appropriate authority. *Almond*, 854 F.Supp. at 444. Moreover, because defendant has failed to establish that he provided trial, sentencing or appellate counsel any documentation, official or otherwise, regarding the alleged restoration of his civil rights under Virginia law, and because he has likewise failed to produce such official documentation here, his ineffective assistance of counsel claim on this ground necessarily fails.

## V.

Defendant next contends that appellate counsel was ineffective in failing to argue on appeal that this Court erroneously admitted into evidence United States Exhibit 18–A—cotton swabs of blood samples taken from defendant's Isuzu—over defendant's chain of custody objection.[9]

■ It is well-settled that evidentiary rulings are not to be overturned on direct appeal absent an abuse of discretion. *See United States v. Young*, 248 F.3d 260, 266 (4th Cir.2001). Here, it would have been frivolous to claim on direct appeal that the admission of Exhibit 18–A was an abuse of discretion; the relevance of the cotton swabs cannot be disputed and the record

8.  Specifically, the letter provides as follows:

    "Please be advised that this office has custody of all official records of executive clemency, which includes the restoration of civil rights, granted by the Governor of the Commonwealth of Virginia. A diligent search has been made of all such records and the undersigned swears that there is no

record of clemency having been granted to Anthony Scales. . . ."

9.  Specifically, in the course of the trial, defendant, by counsel, objected to the admission of Exhibit 18–A on the ground that the government had failed to establish a proper chain of custody with respect to the vehicle from which the swabs were taken.

amply supported the admission of this exhibit over defendant's chain of custody objection.[10] Furthermore, defendant has failed to establish the requisite prejudice with respect to this particular claim, namely that the outcome of his trial would have been different had Exhibit 18–A been excluded. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

## VI.

■ Defendant next argues that appellate counsel was ineffective in failing to challenge his sentence of mandatory life imprisonment on Count 7, pursuant to 18 U.S.C. § 3559(c).[11] Contrary to defendant's contention in this regard, appellate counsel did challenge on direct appeal this Court's decision that defendant's 1981 robbery conviction constituted a serious violent felony sufficient to qualify defendant for a sentence of life imprisonment under 18 U.S.C. § 3559(c). The Fourth Circuit rejected this argument and affirmed defendant's life sentence on Count 7. This is fatal to defendant's claim; issues fully considered and rejected on direct appeal may not be relitigated by a defendant through the use of a § 2255 motion, as defendant is attempting to do here. *See Boeckenhaupt v. United States,* 537 F.2d 1182, 1183 (4th Cir.1976); *Romines v. United States,* 177 F.Supp.2d 529, 533 (W.D.Va.2001). Moreover, even assuming defendant could relitigate the mandatory life sentence issue at this stage, under the guise of ineffective assistance of counsel, counsel's performance, even if assumed to be objectively unreasonable, simply did not prejudice the

defense, as defendant's sentence of life imprisonment under 18 U.S.C. § 3559(c) is proper in all respects. Indeed, it appears from the record that each of the requisite prior felony convictions, including defendant's 1981 robbery conviction, was properly included in the § 3559(c) calculus and defendant's arguments to the contrary are both unsupported and unpersuasive.

## VII.

■ Finally, defendant claims that appellate counsel provided ineffective assistance in failing to raise a claim of ineffective assistance of trial counsel on direct appeal. It is well-settled, however, that unless the record "conclusively demonstrate[s]" that counsel was ineffective, claims of ineffective assistance of counsel are properly raised in the district court by way of a § 2255 motion rather than on direct appeal. *United States v. White,* 238 F.3d 537, 539 n. 1 (4th Cir.2001); *see also United States v. King,* 119 F.3d 290, 295 (4th Cir.1997). As illustrated above, this record does not "conclusively demonstrate" that trial counsel provided ineffective assistance to defendant in any respect. *White,* 238 F.3d at 539 n. 1. To the contrary, the record evidence demonstrates that at all stages in the proceedings, counsel rendered "adequate assistance and made all significant decisions in the exercise of reasonable judgment." *See Strickland,* 466 U.S. at 690, 104 S.Ct. 2052.

## VIII.

Accordingly, for the foregoing reasons, it is hereby **ORDERED** that defendant's

---

10. *See United States v. Ricco,* 52 F.3d 58, 61–62 (4th Cir.1995) (recognizing that the chain of custody "is not an iron-clad requirement, and the fact of a 'missing link' does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect") (citations omitted); *United States v. Howard–Arias,* 679

F.2d 363, 366 (4th Cir.1982) (recognizing that resolution of a chain of custody question "rests with the sound discretion of the trial judge").

11. Section 3559(c) mandates a life sentence if the defendant has been convicted on prior occasions of two or more serious violent felonies. *See* 18 U.S.C. § 3559(c).

motion to vacate, set aside or correct sentence, pursuant to 28 U.S.C. § 2255, is **DENIED**.

It is further **ORDERED** that defendant's request for an evidentiary hearing is **DENIED**, as the facts and legal contentions are adequately set forth in the existing record and an evidentiary hearing would not aid the decisional process. *See United States v. Yearwood*, 863 F.2d 6, 7 (4th Cir.1988) (recognizing that "[a] hearing is not required...on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief.").

Should defendant wish to appeal this Order he must do so within sixty (60) days, in accordance with Rules 3 and 4, Fed. R.App. P.

The Clerk is directed to send a copy of this Order to defendant and all counsel of record and to place this matter among the ended causes.